### ABRAHAM COX *vs.* SARAH JAMES.

M. and wife, being the owners of a piece of land, laid out the same into village
lots, and made and filed a map thereof, which embraced an alley, designated
thereon as "South alley." They subsequently conveyed three of such lots,
by their numbers as described on such map, to the plaintiff, by deeds bound-
ing such lots "*along the north line of South alley*," and described them as lots
known and distinguished on a map of village lots owned by the grantors,
by the numbers mentioned in the deeds, with the appurtenances. *Held* that
neither the grantors, nor those deriving title from them, to the land de-
scribed as an alley, could inclose it, and exclude the plaintiff, and his heirs
and assigns, from using the alley as a way.

*Held, also,* that the reference, in the conveyances, to the map on which the lots
conveyed were described, introduced the map into the deeds, and made
it a parcel of the deeds, and the grantees were entitled to the use of the
alley, along which their lots were described as lying, *as appurtenant to the
grants.*

APPEAL by the defendant from a judgment entered
upon the report of a referee.

The action was brought to establish the right of the
plaintiff to the use of an alley on the south side of his lot,
in the village of Saratoga Springs, which lot was conveyed
to the plaintiff by Amos S. Maxwell and wife, by deed
dated June 2, 1855. It was claimed by the plaintiff that
the description of the premises conveyed by his deed con-
veyed the land to the center of South alley, (the alley in
question;) or if not, that the land immediately south of
said lot, being laid out, on a map referred to in the deed,
as an alley sixteen feet in width, the plaintiff derived the
right, from the deed, as against the grantors therein and
their subsequent grantees, to have the space so marked on
the map as an *alley* always kept open as such. The de-
fendant claimed the whole of the land embraced in the
alley as absolutely her own, by virtue of a *subsequent con-
veyance* from Maxwell's wife to her; and she had fenced
it in with her own lot, and wholly excluded the plaintiff
therefrom.

The action was referred to a referee, who found the fol-

lowing facts : The plaintiff is, and since June, 1855, has been, the owner and in possession of three lots in the village of Saratoga Springs. The defendant is, and since July, 1864, has been, the owner and in possession of two lots in the same village. The plaintiffs lots are known as Nos. 48, 49 and 50; the defendant's lots as 115 and 116. The plaintiff's lots lie adjoining each other, and together form one parcel of land, bounded on the east by Cottage street, and on the west by Regent street, both being public streets. The defendant's lots lie adjoining each other, and together form one parcel, and are bounded in like manner, by the same streets. Separating the plaintiff's lots from said lots of the defendant, is a strip of land sixteen feet in width, extending from Regent to Cottage street, and is described as "South alley" in the deeds and maps herein after mentioned. The plaintiff derives title from Louisa A. Maxwell, who, at the time of and prior to her conveyances to the plaintiff, was the owner of lots 48, 49 and 50, and of South alley. Mrs. Maxwell, in 1854, and before her conveyances to the plaintiff, caused a survey to be made of said lots and "alley," and of other lots and of streets in the vicinity, and a map thereof to be made and filed with the clerk of Saratoga county. Upon this map the plaintiff's lots are designated by said numbers, and the strip of land aforesaid as "South alley." The defendant's lots are also designated thereon by the numbers thereof above given. Upon this map the plaintiff's lots abut upon the northerly side of South alley, and the defendant's lots upon the southerly side thereof. It does not appear that Mrs. Maxwell was the original source of the defendant's title to her lots. Mrs. Maxwell, by the deeds executed and acknowledged by herself and Amos S. Maxwell, her husband, in July, 1855, conveyed lots 48, 49 and 50 to the plaintiff. The material part of the description in the deed of lot 50 is as follows : "All that

certain lot situate in the village of Saratoga Springs, known and distinguished as lot No. 50, on a map of village lots, owned by the parties of the first part, made and surveyed by H. Scofield, civil engineer, in 1854, which said lot is bounded and described as follows.". Here follows a particular description of each side, referring to South alley as follows: "Thence to a stake in north line of South alley; thence along the line of South alley." The description in deeds of lots 48 and 49 contains the like particulars as to each side, and the like reference to the map and *north line of South alley.* Justice Colwell was the defendant's grantor, of one of the lots. This deed to the defendant does not refer to the map nor number of the lot. The boundary is described as running to a lane called South alley, and thence along said alley. The defendant's other deed is from John H. White and others, and the boundary is described as running to the lane called South alley, and thence along said alley. The plaintiff's deeds were recorded in the Saratoga county clerk's office in 1855. In 1864, Louisa A. Maxwell, by a quit-claim deed, conveyed South alley to the defendant, describing it as South alley. At the date of the plaintiff's deeds, South alley was in an unimproved condition. It has never been used either as a public or private way. The plaintiff, shortly after his purchase, inclosed his lots and built a fence along the northerly line of South alley. The alley and the lots now owned by the defendant were then uninclosed. No fence was ever built along the south line of South alley. The defendant, in 1864, after the conveyance to her as aforesaid, of South alley, built a fence along the north line of South alley, as close to the plaintiff's fence, built as aforesaid, and then standing on said line, as the same could be made, and inclosed South alley in her lots, and, against the protest of the plaintiff, has since excluded him from any use or enjoyment of South alley.

The referee's conclusions of law were as follows:

The plaintiff's deeds give him no title to the land to center of South alley, or to any part thereof. Louisa A. Maxwell, by the deeds to the plaintiff above recited, conveyed to him as incident to the grants of lots to him, a right to use South alley as a private way.

The defendant's title to South alley is subject to the right of the plaintiff to use it as a private way.

The defendant had no right to exclude the plaintiff from the use of South alley by the inclosure thereof in her lots.

The plaintiff is entitled to judgment against the defendant for six cents damages, and that the defendant remove the fences erected by her across the easterly and westerly ends of South alley, and that she be perpetually enjoined from so inclosing or otherwise obstructing the same, so as to prevent the plaintiff, his heirs and assigns, from the free use thereof as a private way. And he directed judgment accordingly, with costs against the defendant.

The defendant excepted to the referee's report and findings of fact and conclusions of law, and appealed from the judgment.

*E. D. James*, for the appellant.

I. In order that Louisa A. Maxwell, had she been the real grantor in the deeds to the plaintiff, might dedicate South alley to the use of the plaintiff, as a private way, she must then have owned it, and there is no evidence that Louisa A. Maxwell owned South alley at any time prior to the day of conveyance to the defendant; and wherein the referee found that she did so own it his finding was erroneous, as totally unsupported by evidence, and the exception thereto was well taken.

II. The exception to finding of fact number four is well taken. The deeds to the plaintiff do not of themselves furnish any evidence that Louisa A. Maxwell was, at the time of executing them, owner of the premises conveyed, or

had any interest in them beyond her inchoate right of dower. It was necessary for her, in order that her dower interest might be released, that she should join in the deeds, and she does so in the usual form, describing herself as wife, thus designating the purpose, and acknowledges as wife, and not as owner. As owner, the simple form of acknowledgement was only proper, but if she would release her dower she must do so upon private examination. There is no evidence in the case supporting the finding of the referee in this respect, and it is error. *De non apparentibus, et non existentibus eadam est ratio.*

If she had no interest beyond her inchoate dower in lots 48, 49 and 50, even though she joined in the warranty, and owned the lot South alley, and there had been no words of limitation of boundary to its north line, the deed could not be construed as conveying an easement, for the reason that her release of dower could only be coextensive with the estate conveyed by her husband, and her warranty would be void.

III. There is no evidence in the case that Louisa A. Maxwell ever caused any survey or maps to be made of her lands, and all the evidence of making any map is contained in the testimony of A. S. Maxwell, and the reference made to it in the deeds. It nowhere appears that Louisa Maxwell ever saw this map until after the conveyance to the defendant, or that she knew of its existence, except as reference is made to it in the deeds, and then it is referred to as a map of lands of Amos S. and Louisa, whether in severalty or jointly; whether of lands which they owned as tenants in common, or of lands owned separately, does not appear. If separately, and Louisa and Amos owned lots 48, 49 and 50, as tenants in common, or jointly as husband and wife, a conveyance by them of said lots would not, under any circumstances, work a dedication of lot South alley.

IV. The language of the deeds to the plaintiff limited

Cox *v.* James.

his title to the north bounds of lot South alley. The words of description and boundary expressly excluded any grant to the center of South alley, or any right except such as were appurtenant to the thing granted. A grant of this description does not carry any interest in land beyond the points indicated in the description. (*Child et al.* v. *Starr et al.*, 4 *Hill*, 369. *Jackson* v. *Hathaway*, 15 *John.* 454; 20 *Wend.* 149. *Anderson* v. *James*, 4 *Rob.* 35.) As this lot had never been used at all, it of course was not an appurtenant.

V. The deeds having excluded the lot South alley, by bounding lots 48, 49 and 50, by monuments in the north line of said alley, no easement is created therein in favor of the plaintiff. The plaintiff could acquire no right, except under his grant, conceding, for this argument, that Louisa A. Maxwell owned all the lands in question at the time of the conveyances to Cox. The right of way could only be acquired by grant of the owner, or from necessity. (2 *Kent's Com.* 419.) Prescription supposes a grant, and right, from "necessity," grows out of construction of the grant. The public may acquire a right of way otherwise than from grant, and may, among these ways, by what is termed dedication. But dedication assumes a grant to the public, or in other words, estops the owner from saying he has not granted. All the cases, when sifted, put the creation of a right of way directly upon the grant. It may be, and is frequently, called dedication, still the creation is found in the deed. When lands are bounded upon or by public streets, or are conveyed by map numbers abutting upon streets, the title is held to extend to the center of the street, by construction of the deed that such was the intention.

Under our statutes an interest in lands can only be conveyed, from one person to another, by deed. The right of way at bar is an easement, and an interest in lands, and can only be conveyed or created by deed, (the question of

operation of law not arising here.) With the exception of cases where a dedication to the public is made and upheld by way of estoppel, there is no dedication or other way to convey voluntarily an easement from one person to another but by deed. If A. conveys to B., by map or otherwise, so as to indicate that the intention is that B. shall have an easement in the streets referred to in the deed, or on the map, then the deed grants the easement; but if the deed, by its terms, excludes the easement, then none can exist in favor of the grantee.

Although the map is referred to in the case at bar, and the lots 48, 49 and 50, do in fact abut upon South alley, the deed assumes to convey only that part within the lines indicating the extent of the lot, and by express words excludes the alley, for the south line of the lots is only to extend to monumental points in the north line of the alley.

VI. There had never been any acceptance of the *locus in quo*, or use of it in any form, so there could be no estoppel, and consequently no dedication. And even if Mrs. Maxwell had some time thought to dedicate it, she might revoke. (*Holdane* v. *Trustees of Cold Spring*, 21 *N. Y.* 474.)

VII. The easement or right of way to the plaintiff is not an incident to the grant, and the facts, as found by the referee, do not justify such a conclusion of law. The proof is undisputed that the premises of the plaintiff were and are surrounded on three sides by public highways, and he can pass off his own lands at every point unobstructedly on the northeast and west sides; and the plaintiff admitted the absence of necessity by proposing to divide the lands. Where is the necessity which requires such a construction of the deed as that Louisa Maxwell intended to convey this right of way as an incident. A construction of a deed which will make it convey more than is expressed upon the face, as incident to the grant, is justified only by the assumption that the grantor did not intend to convey that which the grantee could not enjoy, but did intend to

convey the easement in order that the subject conveyed might be enjoyed. Such construction always arises in necessity. If an easement be conveyed, nothing passes as incident to it but what is necessary to its enjoyment, and as an easement is but a limited interest in the land, incidents more naturally attach to it than when the fee is greater. (*Lyman* v. *Arnold*, 5 *Mason*, 195.) The necessity must be shown, or it cannot be said the parties intended more than they said in the deed. In this case it is shown there was no necessity, and the right of way, therefore, cannot be taken as incident to the grant. (*Badeau* v. *Mead*, 14 *Barb*. 336. *Willard on Real Estate*, 194, 195.)

VIII. The referee finds as a conclusion of law, "that the plaintiff's deeds give him no title to the land to the center of South alley, or to any part thereof." This conclusion of law is inconsistent with the idea that the plaintiff has a right to use South alley as a private way, for this is a title to some part of it; and as the way by necessity was not chosen by the plaintiff, but if at all was pointed out by his grantors, then they take directly by the grant. (*See Willard on Real Estate, supra*.)

IX. The objections to proof of title and possession by parol, are well taken. The evidence of Maxwell was incompetent to prove the conveyance to Freeman. And the objection to the question whether South alley was ever opened from Cottage street, east, is also well taken.

X. The *locus in quo* cannot be said to have been conveyed as an incident of the character of appurtenant, for it had never been used as such—or at all in connection with any of the lots owned by the plaintiff. (*Huttemeier* v. *Albro*, 18 *N. Y*. 50.) Finally, it is insisted the judgment should be reversed, the finding of the referee being contrary to the law and the facts, unless the calling a piece of land by a particular name gives it a particular character, and the calling a lot of land South alley, *per se*, converts

it into a private way, or the calling a heathen after one of the apostles converts him into a Christian.

*A. Pond,* for the respondent.

I. The deeds from Maxwell and wife conveyed to the plaintiff the land to the center of South alley, as described and laid out on the map referred to in the deeds. 1. It is well settled that a deed, under the circumstances existing here, conveying a lot by its number, simply, and referring to a map upon which the lot is laid out, carries the grantee to the center of the street on which it appears to be bounded, by the map. The cases to this point are numerous and decisive. (*Perrin* v. *The N. Y. Cent. R. R. Co.,* 36 *N. Y.* 120. *Bissell* v. *Same,* 23 *id.* 61. *Varick* v. *Smith,* 9 *Paige,* 547.) And this is so, although such street has never been adopted or accepted by the public authorities. The grantor is held to have dedicated such land for the purposes indicated on the map, and the grantee in the deed takes the land by grant. (*Id. Holdane* v. *Cold Spring,* 21 *N. Y.* 474. *Parker* v. *Smith,* 17 *Mass.* 413.) 2. So also where a lot is conveyed, and the only description in the deed is by courses and distances, and that portion of the side of the lot conveyed which abuts on the street, is expressly limited to the line of the street adjoining the lot, then and in that case the parcel conveyed excludes the whole of the street and extends only to the line of the street adjoining the lot. (*Anderson* v. *James,* 4 *Rob.* 35. *Child* v. *Starr,* 4 *Hill,* 369. *S. C.,* 20 *Wend.* 149.) 3. But where the only description is by courses and distances, and they in fact bring the lot up to a street, although the street be not mentioned in the deed, then, and in such case, it is also held that the title of the grantee extends to the center of the street. (*Sizer* v. *Devereux,* 16 *Barb.* 160.) 4. But it is attempted by the defendant to apply the principle to this case which would apply to it if the deeds to the plaintiff did not refer to the number of the lot at all, nor to the

map, but merely restricted the description to the north line of the alley. But this would be erroneous, and I insist the fair construction is to carry the plaintiff's lots to the center of the alley; because the deeds have referred to the lots by their numbers, and as laid out on the map. The description which follows, only describes the lines of the lot just as they appear on the map, in fact. It is but amplifying the description which the deed would in fact contain, if the latter part were entirely omitted. The lines on the map would then show this lot distinct from the alley by the north line of the alley which separates the latter from the lot. Now the reference to the map makes it a part of the deed, and the deed is the same as though the map was incorporated in it. They are to be taken together, and both constitute the description of the land conveyed. (*Smyles* v. *Hastings*, 22 *N. Y.* 222. *Sizer* v. *Devereux*, 16 *Barb.* 160. *Herring* v. *Fisher*, 1 *Sandf.* 344.) This being so, the deeds to the plaintiff in this case should be construed the same as though the latter part of the description was not contained in them, and this would carry the plaintiff to the center of the alley. It is a question of intention, and it is not to be presumed that the grantors in the plaintiff's deeds designed to retain the title in those streets and alleys which were laid down upon the map. Of course, if nothing but the latter part of the description had been inserted, without reference to the number of the lot and the map, the defendant's construction might prevail; and it is equally certain that if the latter part were left out and the number of the lot and map were referred to, the construction here insisted on would prevail. Now the question here is, what is the construction where both are inserted? I insist it is still to carry the plaintiff's title to the center of the alley in question. If there are conflicting descriptions inserted, and it is left doubtful on the face of the deed whether the plaintiff goes to the center of the alley or not, the law will construe the deed

most strongly against the grantors, and that will lead to the adoption of the construction for which I contend. (*Marsh* v. *Burt*, 34 *Verm.* 289. *And see Lozier* v. *N. Y. Cent. R. R.* 42 *Barb.* 468.) No case has fallen under my observation where a deed containing a description like the one contained in the deeds to the plaintiff has been decided to carry the grantees only to the exterior line of the street, and not to the center thereof. And I insist that the current of authority and tendency of the decisions now is to construe a deed as extending to the center of a highway, street, lane, alley or stream on which a lot therein conveyed is bounded. And such ought to be the construction, as it is utterly absurd to suppose that either party to the deed, under such circumstances, intended that the grantor should retain a legal title to a piece or small strip of land, which, in any event, has been dedicated as a street or alley, and which, therefore, can never be of any practical use to him or his grantees. Hence the principle is well established, that to prevent the deed from extending to the center of the street or alley, under such circumstances, the grantor must express such intent in clear terms, or the legal presumption that it does so extend will prevail. If he puts in his deed, as the plaintiff's grantors did, a description which operates both to exclude and include the street or alley, it is no such clear expression of intent as to prevent the deed extending to the center, and I claim the plaintiff's deeds so extend.

II. But if the title of the plaintiff is held not to extend to the center of the alley, as laid down on the map, still the defendant's grantors having conveyed to the plaintiff by the map, by which an alley is laid out on the south side of his lots, the land covered by the alley was thereby dedicated by the Maxwells as and for an alley for the convenience of those lots adjoining on both sides of it, and neither they nor their grantees have any right to shut it up and to exclude the plaintiff from using it. It became an appurte-

Cox *v.* James.

nant to the land conveyed, and the plaintiff has the right to have it kept open and the defendant's fence removed therefrom. (*Badeau* v. *Mead*, 14 *Barb.* 328.) Look at the description in the conveyance in this case, and compare it with the plaintiff's deeds.

In this case the court remark, (*p.* 336, *Strong, J., giving the opinion:*) "I consider it to be well settled, that where the grantor bounds the lands which he conveys, by roads, whether existing or to be made, over lands retained by him, he conveys to the purchaser, as incident to the grant, a right to use such roads as described, when they adjoin, and if necessary, out to the common highway. Such right becomes appurtenant to the land conveyed."

So too, in *Smyles* v. *Hastings*, (22 *N. Y.* 222,) where a similar question arose, Wright, J., remarked: "I am of the opinion that William Atkinson, by the conveyance to him of lot No. 8, of the subdivision on the partition between the proprietors of the tract, became entitled, as a part of his grant, to a right of way over the road laid down on the map, as an easement appurtenant to his lot; and this without regard to the question of necessity. By the subdivision and allotment of the tract by the proprietors, a right of way over this road was annexed as an easment to the lots bounded upon it, and the easement passed to Atkinson by the conveyance to him of lot No. 8. The proprietors marked out this road running through the tract from east to west, bounded lots upon it, and then executed conveyances of such lots. In fact and in effect, the map on which the road was laid out was part and parcel of such conveyances; and without resort to it, the lands described in them could not be located."

The judgment, therefore, directed by the referee was right to the extent to which it went; and it should have recognized the right of the plaintiff to the land to the center of the alley. But the error of the referee in omitting to give such a judgment, is one of which the defendant

has no right to complain, and the judgment entered upon the report of the referee should, therefore, be affirmed, with costs.

*By the Court,* ROSEKRANS, J.   There can be no question as to the correctness of the referee's findings of facts and conclusions of law.   The plaintiff's grantors are the original owners of the lots conveyed to the plaintiff, and of the strip adjoining those lots on the south, called South alley. Before the conveyance to the plaintiff, they had made a map of the lots and alley, and filed it, and the conveyances bounded all the lots "*along the north line of South alley,*" and conveyed them as lots known and distinguished on a map of village lots, owned by the grantors, by their numbers, with the appurtenances; and the simple question is whether, under such a conveyance, the grantor, or those deriving title from him to the land described as an alley, can inclose it and exclude the plaintiff, and his heirs and assigns, from using the alley as a way.

In the case of *Badeau* v. *Mead*, (14 *Barb.* 328,) Strong, J., in delivering the opinion of the court, says: "I consider it to be well settled that where the grantor bounds the lands which he conveys, by roads, whether existing or to be made, over lands retained by him, he conveys to the purchaser, *as incident to the grant,* a right to use such roads as described, *when they adjoin the premises,* and, if *necessary,* out to the common highway.   Such right becomes appurtenant to the land conveyed."   In that case, the grantor had laid out a tract of land into village lots, and had made and filed a map, upon which the lots, and streets, and alleys adjoining them were described; and the conveyance of the plaintff's lot was in almost the precise language of the conveyance to the plaintiff in the present case.   It conveyed the lot by its number, and bounded it by the southerly line of an adjoining street, and conveyed the appurtenances.   The grantor obstructed the end of the

Cox *v.* James.

street, where it entered the White Plains road.   In refer-ence to the street which was obstructed by the grantor, Strong, J., said: "The plaintiff has a right to an unob-structed way to the White Plains road, and can have the fence across it removed, when he seeks for it in an appro-priate proceeding." The case was approved by the Court of Appeals, in the case of *Fonda* v. *Borst,* (2 *Keyes,* 51.) There the defendant had laid out a tract of land into vil-lage lots, and had filed his map and conveyed to the plain-tiff's grantor a lot by its number, as described on the map. Brown, J., delivering the opinion of the court, repeats the rule laid down in *Badeau* v. *Mead,* that "when a grantor bounds the lands which he conveys, by roads, whether ex-isting or to be made over the lands retained by him, the purchaser takes, as an incident of the grant, the right to the use of such roads." This, he says, "is the rule as to *rural* property, so that whether the servitude which the plaintiff claims be a rural or an urban servitude, to this extent his claims could admit of no dispute." In the cases cited, and in the one now before us, the reference to the map upon which the lots conveyed were described, intro-duced the map into the deeds, and made them a parcel of the deeds, and the several grantees were entitled to the use of the streets, along which their lots were described as lying, as appurtenances to the grants.

The plaintiff is entitled to the unobstructed use of the alley-way along which his lot is described as lying, upon the map.   (*See opinion of Wright, J., in Fonda* v. *Borst, supra.*)

The judgment should be affirmed.

[St. Lawrence General Term, October 5. 1869. *James, Rosekrans* and *Potter,* Justices.]